*Mumma and Alricks, for petitioners.*

---

*Court of Common Pleas, Dauphin County, March 4th,* 1861.

THE COMMONWEALTH *v.* EMERSON.

Where a man voted in a particular county, this is sufficient evidence of his residence in that county to allow a commission of lunacy to be issued there.

BY THE COURT.—The act of Assembly provides that inquests to ascertain if the party is a lunatic or habitual drunkard shall be held in the county in which he resides; and in case he has no residence within the commonwealth, in the county where he can be found—of course found at the commencement of the proceeding.   Residence is a mixed question of acts and intentions; and the latter is sometimes inferred from the former, at other times from declarations accompanied with acts.   The evidence shows that Mr. Emerson owns a house and farm in Dauphin county, where he undoubtedly made his residence till some time in May last, when he moved to Petersburg, in Perry county, with the avowed purpose of practicing law and schooling his child.   He retained four rooms in his house at the time of leaving this county, as also a portion of his goods; but afterwards rented out three of his rooms, retaining a fourth, in which he kept a bed, chairs, and a table.   He took rooms in a hotel in Petersburg, where he lodged and had his books, etc.   Occasionally through the summer he

[The Commonwealth *v.* Emerson.]

was back at his farm; sometimes remaining over-night, and perhaps for a day or two, but returning to Petersburg.

About September 1st he returned to his farm, the witnesses say, to look after his crops; and seems from the evidence to have made it his general home until December 9th, when he went to a public house in the same township, where he appears to have boarded until December 25th, occasionally going to Petersburg. This proceeding was commenced December 17th. Mr. Emerson voted at the general election, October 9th, in the township where his house was situated, and did not vote anywhere at the November election.

This statement of facts we consider shows decidedly that his residence was in Dauphin county when the petition was presented. Voting at the election in October unequivocally shows his own opinion and intention, as he could not lawfully vote at any other place than where he resided. We have no right to presume that he committed a fraud, and he is estopped from averring it. Had the proceeding been commenced in Perry county, this same evidence (although less conclusive for than against the party) would have caused the proceedings to be set aside. Although some of the witnesses express an opinion that Emerson resided in Petersburg, and some of those called by the petitioner gave such opinion before the inquest, yet that is to have little weight with us. We consider that the fact of owning real estate here, retaining his rooms on renting it, returning frequently, and staying almost permanently from September 1st to December 9th, on his own farm, and even then not returning to Petersburg, but going to board at another house in the neighborhood, would be strong evidence of residence; but when you add to that the conclusive act of voting at the election, it is overwhelming. If not resident in this county, he had none in the commonwealth, and in that case the inquest would be properly taken here, where he was found. The motion to set aside the requisition is overruled; but as a traverse has been filed, we shall make no further order, unless it is shown by testimony to be necessary for the safety of the estate.

*Herr, for plaintiff.*

*Rawn, for defendant.*